# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDY CHRISTIAN<br>   Plaintiff, | : | |
| | | CIVIL ACTION |
| v. | : | NO. 16-963 |
| LANNETT COMPANY, INC<br>   Defendant. | : | |

**MEMORANDUM**

**Jones, II J.**                             **March 29, 2018**

## I. Introduction

Plaintiff Wendy Christian commenced the above-captioned action, alleging Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* (hereinafter "Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (hereinafter "ADA"), and the Family and Medical Leave Act, 42 U.S.C. §§ 2601, *et seq.* (hereinafter "FMLA"). Defendant subsequently raised several counterclaims, sounding in both federal and state law. Currently before the court are Defendant's Amended Counterclaims, in which Defendant alleges violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* (hereinafter "DTSA") (Count III), and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.* (hereinafter "CFAA") (Count VII). (Am. Countercl. ¶¶ 96-106, 132-146.) Defendant's state law claims include: Injunctive Relief (Count I); Breach of Contract (Count II); Misappropriation of Trade Secrets Under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat §§ 5301 *et seq.* (Count IV); Replevin (Count V); and, violation of the Pennsylvania Wiretapping and Electronic

Surveillance Control Act, 18 Pa. Cons. Stat. §§ 5701, *et seq*. (Count VI). (Am. Countercl, ¶¶ 82-95, 107-131.)

Plaintiff has moved to dismiss Defendant's Counterclaims pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Plaintiff's Motion shall be granted.

## II. History

### A. Procedural Background

Plaintiff commenced the instant action on March 1, 2016. (ECF No. 1.) Pursuant to a Stipulation for Amendment of Pleadings, Plaintiff filed her First Amended Complaint on September 1, 2016. (ECF Nos. 18, 19.) On September 2, 2016, Defendant filed an Answer to Plaintiff's First Amended Complaint, in which Defendant raised various counterclaims arising under federal and state law. (ECF Nos. 20.) On September 23, 2016, Plaintiff filed a Motion to Dismiss Defendant's counterclaims, which was denied on October 24, 2016. (ECF Nos. 22, 31.) The parties were granted leave to conduct jurisdictional discovery regarding Defendant's DTSA counterclaim. (ECF No. 31.) Following jurisdictional discovery, Defendant filed a First Amended Answer with Affirmative Defenses and Amended Counterclaims. (ECF No. 65.) A challenge thereto, as filed by the Plaintiff, is now before this Court. (ECF No. 66.)

### B. Factual Background

On or around June 2013, Plaintiff was offered a job working for Defendant as a Business Application Delivery Manager. (Am. Compl. ¶ 13.) Plaintiff accepted the offer and commenced her employment on July 15, 2013. (Am. Compl. ¶ 14.) Plaintiff alleges that during her employment with Defendant, she was treated in a disparate and discriminatory manner as

2

compared to her male coworkers. (Am. Compl. ¶16.) For example, Plaintiff claims that at one point in 2013, she and a male co-worker each requested permission to hire an assistant, resulting in a granting of the male co-worker's request and a denial of Plaintiff's request. (Am. Compl. ¶17.) Plaintiff further alleges she was not informed of certain expense reimbursement procedures, thereby resulting in the receipt of less reimbursement than her male coworkers. (Am. Compl. ¶18.) Plaintiff ultimately complained of gender discrimination to both Defendant and to the Equal Employment Opportunity Commission. (Am. Compl. ¶ 19.)

In September 2014, Plaintiff requested and took a medical leave of absence pursuant to the FMLA. (Am. Compl. ¶ 20.) On or about December 21, 2014, Plaintiff requested to return to work with several workplace accommodations, including but not limited to a modified start time, a maximum of several work hours per day, and flexibility to work from home or to attend doctor's appointments. (Am. Compl. ¶ 21.) Defendant's Human Resources Department did not grant Plaintiff's aforementioned accommodation requests, and instead requested that Plaintiff provide "more information" regarding her medical conditions. (Am. Compl. ¶ 22.) Plaintiff subsequently provided the requested additional information regarding her diagnoses and the reasons for each accommodation she requested. (Am. Compl. ¶ 23.) However, on or about January 15, 2015, Defendant terminated Plaintiff from her employment. (Am. Compl. ¶ 24.) In doing so, Defendant did not engage in any interactive process regarding Plaintiff's termination, did not ask Plaintiff if she could manage her duties with more limited accommodations, and did not ask Plaintiff if there were any other positions that she may be able to perform. (Am. Compl. ¶ 26.)

Following Plaintiff's termination from employment, she was required to return any and all of Defendant's property to Defendant. (Am. Countercl. ¶ 47.) In particular, Plaintiff retained a laptop that Defendant had issued to Plaintiff during the course of her employment, which Plaintiff subsequently returned to Defendant after having allegedly erased the contents of the storage drives. (Am. Countercl. ¶¶ 52-54.) Because Defendant was of the belief that the contents of the laptop had been erased, it did not believe Plaintiff had retained any of Defendant's electronic documents. (Am. Countercl. ¶ 58.) However, on July 18, 2016, Plaintiff's counsel informed Defendant that she was in possession of documents from Plaintiff's employment with Defendant, and would produce same (in excess of 22,000 pages) in response to Defendant's discovery request regarding the underlying discrimination matter (the Christian Document Production). (Am. Countercl. ¶¶ 59-60.)

As a result of the document production, Defendant alleges in pertinent part that Plaintiff acquired Defendant's confidential, proprietary, and trade secret information through non-public and improper means during the course of her former employment with Defendant. (Am. Countercl. ¶ 100.) Defendant further alleges that the Christian Document Production (identified in Paragraphs 12, 61 through 70, and 98 of Defendant's Amended Counterclaim) constitutes legally protectable trade secrets under the DTSA. (Am. Countercl. ¶ 99.) In particular, Defendant claims that during her employment with Defendant, Plaintiff misused her access to Defendant's IT systems and SAP ERP system to copy Defendant's Confidential or Proprietary Information onto Plaintiff's personal external hard drive. (Am. Countercl. ¶ 76.) Defendant alleges that on or after May, 12, 2016, Plaintiff disclosed Defendant's trade secrets to third-parties unaffiliated

4

with Defendant, including, but not limited to, her former legal advisors, spouse, and current counsel. (Am. Countercl. ¶105.)

### III. Standards of Review

#### A. Rule 12(b)(1)

Rule 12(b)(1) permits parties to assert, by motion, the defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial challenge or a factual challenge. If a facial challenge concerns an alleged pleading deficiency, the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). When considering a facial challenge, "the trial court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA*, 535 F.3d at 139 (internal quotation, citation, and alterations omitted). If the challenge before the trial court is a factual challenge, the court does not accord any presumption of truth to the allegations in the plaintiff's complaint, and the plaintiff bears the burden of proving subject-matter jurisdiction. *Id.* With a factual challenge, the court may weigh evidence outside the pleadings and make factual findings related to the issue of jurisdiction. *Id.*; *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen*, 549 F.2d at 891.

### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id. Accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

### C. 28 U.S.C. § 1367

"District courts may decline to exercise supplemental jurisdiction over a claim [if]: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Alpern v. Cavarocchi*, Civ. 98-3105, 1999 U.S. Dist. LEXIS 5929, at *26 (E.D. Pa. Apr. 29, 1999). "Under §1367 (a), all state law claims…are subject to [a] jurisdictional inquiry: if they are so related to

claims in the action within [the court's] original jurisdiction…that they form part of the same case or controversy under [Article III of the United States Constitution], then they are within the court's supplemental jurisdiction." *Alpern*, 1999 U.S. Dist. LEXIS 5929, at *28. "The key threshold question…is whether the state and federal claims derive from a common nucleus of operative fact." *Alpern*, 1999 U.S. Dist. LEXIS 5929, at *29. As to this "common nucleus," it has been held that "mere tangential overlap of facts is insufficient, but total congruity between the operative facts…is unnecessary." *Alpern*, 1999 U.S. Dist. LEXIS 5929, at *29.

**IV. Discussion**

    **A.    Defendant's DTSA Claim**

In its Amended Counterclaim, Defendant alleges Plaintiff violated the DTSA by acquiring and subsequently using Defendant's trade secrets or disclosing them to third parties. (Am. Countercl. ¶¶ 96-106.) Plaintiff moves to dismiss Defendant's DTSA claim, arguing she is immune from liability because the only alleged disclosure of trade secrets which took place after the effective date of the Act occurred through a production of documents provided to her attorneys in confidence, pursuant to federal discovery requirements. (Br. Supp. Mot. Dismiss Am. Countercl. 24.)

"[A] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Kewanee Oil v. Bicron Corp.*, 416 U.S. 470, 475 (1974). "The subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." *Id*. "This necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another in

7

confidence, and under an implied obligation not to use or disclose it." *Id.* at 475. (internal quotation and citation omitted).

"Under the DTSA, 'misappropriation' is defined in several different ways." *Brand Energy & Infrastructure Servs. v. Irex Contr. Grp.*, Civ. 16-2499, 2017 U.S. Dist. LEXIS 43497, at *8 (E.D. Pa. Mar. 24, 2017). The "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" constitutes a misappropriation. *Brand Energy,* 2017 U.S. Dist. LEXIS 43497, at *8. "A misappropriation also occurs when one discloses or uses another's trade secret without the consent of the trade-secret owner. *Brand Energy,* 2017 U.S. Dist. LEXIS 43497, at *8 (internal quotation and citation omitted). However, the DTSA provides immunity for the disclosure of a trade secret "in confidence…to an attorney…solely for the purpose of reporting or investigating a suspected violation of law." 18 U.S.C. §1833(b).

"The DTSA was formally enacted May, 11, 2016"—also its effective date. *Brand Energy & Infrastructure Servs. v. Irex Contr. Grp.*, Civ. 16-2499, 2017 U.S. Dist. LEXIS 43497, at *8 (E.D. Pa. Mar. 24, 2017). Therefore, it applies to misappropriations that allegedly occurred on or after May 11, 2016. *Brand Energy*, 2017 U.S. Dist. LEXIS 43497, at *14. There is no provision for retroactive application of the DTSA to misappropriations committed before the effective date. When Congress does not clearly indicate its intention to apply a civil statute retroactively, courts apply a presumption against retroactive application. *Perez v. Elwood*, 294 F.3d 552, 558 (3rd Cir. 2002). With that said, courts have held that that the DTSA applies to misappropriations that began prior to the DTSA's effective date if the misappropriation continues to occur after the effective date. *Brand Energy*, 2017 U.S. Dist. LEXIS 43497, at *19. Though the DTSA

8

distinguishes between acquisition, use, and disclosure as separate activities which may constitute a misappropriation, these separate activities may be taken together to constitute a single misappropriation if the misappropriations are related. 18 U.S.C. § 1839 (5), *Brand Energy,* 2017 U.S. Dist. LEXIS 43497, at *14.

In this case, Plaintiff's employment ended on January 15, 2015, therefore the authorization to possess or access the documents at issue definitively ended on that date, as well. Defendant alleges that on or after May 12, 2016, Plaintiff "disclosed [Defendant's] trade secrets [to] . . . her former legal advisors, spouse, and current counsel." (Am. Countercl. ¶ 105.) In support of its opposition to the instant Motion, Defendant submits a portion of Plaintiff's deposition testimony pertaining to an alleged disclosure she made to her husband. However, the document in question was transferred electronically on December 11, 2013—well before the effective date of the DTSA. (Christian Dep., 139-141, Nov. 7, 2016.) Since the alleged acquisition and disclosure by Plaintiff to her husband both occurred during 2013, they occurred before DTSA enactment date and are therefore not covered.

Thus, the only remaining facts Defendant provides to indicate a misappropriation may have occurred before the Act's effective date and continued beyond the effective date, are those that pertain to the May 12, 2016 disclosure to her counsel of 22,000 pages of documents acquired prior to January 15, 2015 (the Christian Document Production). (Am. Countercl. ¶ 60.) Upon assessment of same, this Court finds that the Christian Document Production falls within the immunized disclosure parameters defined by the DTSA: Plaintiff's alleged disclosure was made to Plaintiff's counsel pursuant to a discovery Order of this Court, within the context of a lawsuit regarding violations of Title VII, the ADA, and the FMLA. Therefore, said disclosure to counsel

9

cannot be used to allege a continuing misappropriation of the documents acquired before the DTSA enactment date.[1]

The Supreme Court has clearly held that the secrecy element of a trade secret is not lost "if the holder of the trade secret reveals the trade secret to another in confidence . . . under an implied obligation not to use or disclose it," and that "a trade secret law . . . does not offer protection against discovery by fair and honest means . . . such as accidental disclosure." *Kewanee*, 416 U.S. at 475. Third Circuit courts have also acknowledged the Supreme Court's "fair and honest disclosure" standard in deciding whether a trade secret law may be applied. *See e.g., Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628, 638 (3rd Cir. 1992) ("A trade secret law . . . does not offer protection against discovery by fair and honest means, such as . . . accidental disclosure[.]"); *Pennwalt Corp. v. Akzona, Inc.*, 570 F. Supp. 1097, 1115 (D. Del. 1983) ("Trade secret law, even if it were applicable here, does not afford protection against discovery by fair and honest means, such as . . . accidental disclosure[.]").

Defendant herein has alleged no facts to indicate that Plaintiff's counsel intended to use or disclose the purported trade secrets they acquired to anyone other than Defendant, to whom the trade secrets belong. Moreover, despite numerous opportunities to conduct discovery on this

---

[1] In its Sur-Reply, Defendant contests application of the immunity defense based on the record as it currently exists. (ECF No. 79.) Inasmuch as the DTSA was enacted only two years ago, there is limited precedent which addresses the issue of immunized disclosures under this section of the DTSA (18 U.S.C. § 1833(b)(A)). In *Unum Grp. v. Loftus*, the misappropriation at issue was a disclosure made by the defendant to his attorney. 220 F. Supp. 3d 143, 146 (Dist. Mass. 2016). However, the defendant had only "indicated that he [was] contemplating [an action]" when he made the disclosure. *Id.* The court noted that it was "unclear" what "suspected violation of law," was under investigation by the disclosing party. *Id.* In the case at bar, it is clear the disclosure occurred pursuant to the initial discovery Order entered by this Court in relation to Plaintiff's underlying discrimination suit involving violations of federal law.

issue, Defendant has failed to provide any facts which would enable the Court to discern whether Plaintiff intentionally or accidentally disclosed the alleged trade secrets.[2]

Accordingly, because Defendant has pleaded insufficient facts to potentially substantiate a claim under the DTSA, Plaintiff's Motion to Dismiss said counterclaim shall be granted.

### B. Defendant's Claim of a CFAA Violation Is Insufficient

Plaintiff also moves to dismiss Defendant's counterclaim arising under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*, contending Defendant failed to provide sufficient factual allegations in support of its claim. (Br. Supp. Mot. Dismiss Am. Countercl. 34-

---

[2] This Court notes that in its original discovery Order entered on June 16, 2016, the parties were directed to conclude fact discovery on or before October 14, 2016. (ECF No. 13.) In accordance with a discovery request by Defendant, Plaintiff's counsel informed Defendant of the 22,000 pages referenced herein on July 13, 2016. On September 1, 2016, this Court approved a Stipulation permitting Plaintiff to amend her Complaint and said Amended Complaint was filed therewith. (ECF Nos. 18, 19.) The following day, Defendant filed its Counterclaim against Plaintiff. (ECF No. 20.) Defendant then sought its first extension of time to complete discovery and this request was granted, thereby extending the discovery deadline to December 13, 2016. (ECF No. 23.) Plaintiff filed her first Motion to Dismiss Defendant's Counterclaims on September 23, 2016, after which Defendant served its second set of Interrogatories, third Request for Productions of Documents, and first Request for Inspection of Devices upon Plaintiff. On October 24, 2016, this Court issued its jurisdictional discovery Order, thereby providing Defendant with forty-five (45) days to obtain the information it needed to properly amend its counterclaims. (ECF No. 31.) On December 6, 2016, United States Magistrate Judge Lynne A. Sitarski granted Defendant the use of a forensics consultant to "image" the hard drives of devices identified by Plaintiff during her deposition. (ECF No. 44.) Defendant sought an extension of previously-set deadlines, which was granted by this Court. (ECF No. 52.) Defendant then sought a second extension of these deadlines, which was also granted. (ECF No. 55.) On April 13, 2017, Judge Sitarski further granted a request by Defendant for Plaintiff to produce for inspection two (2) USB devices used by Plaintiff in connection with subject laptops. (ECF No. 62.) On June 28, 2017, a final Order was entered by Judge Sitarski, directing Defendant to file its Amended Counterclaims within fourteen (14) days. (ECF No. 63.) Defendant did so and the instant Motion followed.

As is clearly evident from this history, Defendant has been given numerous opportunities that extended beyond eight (8) months, to obtain the information it would need to plead a plausible DTSA claim, yet failed to do so.

11

37.) Defendant rebuts this assertion, arguing instead that it has fulfilled the elements of Subsections (a)(2)(C) and (a)(4) of the CFAA, thereby sufficiently pleading violations of same. (Br. Opp'n Mot. Dismiss Am. Countercl. 36.)

### 1. 18 U.S.C. § 1030 (a)(2)(C): Defendant Fails to Assert the Computer in Question was a "Protected Computer," as Defined by the Act.

The CFAA provides in pertinent part that it is a violation to intentionally access a computer without authorization and thereby obtain information from a "protected computer." 18 U.S.C. §1030 (a)(2)(C). The CFAA defines a "protected computer" as one that is:

> (A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

18 U.S.C. §1030 (e)(2).

The CFAA "remains primarily a criminal statute designed to combat hacking," and, as such, jurisprudential care should be taken not to "contravene Congress's intent by transforming a statute meant to target hackers into a vehicle for imputing liability to [defendants] who access computers or information in bad faith." *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 590 (E.D. Pa. 1990).

When analyzing the "protected computer" element as presented in a Complaint alleging a CFAA violation, courts within this Circuit have consistently ruled that merely stating a computer is "used within interstate commerce," fails to satisfy *Twombly* pleading requirements. *See e.g.,*

*Advantage Ambulance Group, Inc. v. Lugo*, Civ. 08-3300, 2009 U.S. Dist. LEXIS 26465, at *6-7 (E.D. Pa., Mar. 30, 2009) ("Plaintiff has alleged in pertinent part that the computer so accessed was used in interstate commerce. As was clearly noted in *Bell Atlantic Corp. v. Twombly*, mere reiteration of the elements of a claim—without more—is insufficient to survive a 12(b)(6) motion to dismiss[.]") (internal quotation marks and citation omitted); *Fontana v. Corry,* Civ. 10-1685, 2011 U.S. Dist. LEXIS 115693, at *17 (W.D. Pa., Aug. 30, 2011) ("Moreover, the statement . . . that the computer system accessed by [Plaintiff] is a 'protected computer,' is nothing more than a 'threadbare recital' of one of the elements of a [CFAA claim], supported by merely conclusory statements,' and thus, is insufficient under *Twombly* and *Iqbal*.")

    Defendant herein asserts that the computer at issue is a "protected computer" as defined by the CFAA. (Am. Countercl. ¶ 134.) However, Defendant alleges no facts to permit such an inference. Instead, Defendant makes a conclusory statement that "[the computers Plaintiff used during her employment with Defendant were] used regularly to . . . conduct business and communicate both throughout the United States and internationally, and, thus, in and affecting interstate or foreign commerce or communication," merely repeating the definition of a protected computer as defined in the Act. (Am. Countercl. ¶ 134.) Inasmuch as Defendant's allegations regarding same mirrors those that have already been rejected by the courts, Defendant cannot sustain its claim that Plaintiff violated 18 U.S.C. §1030 (a)(2)(C).

### 2. 18 U.S.C. § 1030(a)(4): Defendant Fails to Address the Intent Requirement

Subsection (a)(4) of the CFAA provides that an actor must "knowingly and with intent to defraud, access a protected computer without authorization[.]" 18 U.S.C. § 1030 (a)(4). As discussed above, Defendant had plentiful opportunity to conduct discovery regarding these issues, including the taking of Plaintiff's deposition. Nevertheless, while Defendant addresses the unauthorized use element of the provision in its Amended Counterclaim, and alleges facts which appear to fulfill the scienter requirement of 18 U.S.C. § 1030 (a)(4), Defendant fails to allege any facts regarding Plaintiff's intent to defraud when accessing the computer at issue. (Am. Countercl. ¶ 136.) An allegation of a violation of 18 U.S.C. §1030 (a)(4) cannot succeed if an "intent to defraud" is absent. *QVC, Inc.*, 159 F. Supp. 3d at 597.

Accordingly, because Defendant has failed to provide sufficient facts which would allow the court to reasonably infer Plaintiff violated 18 U.S.C. §1030 (a)(2)(C) and 18 U.S.C. §1030 (a)(4), Plaintiff's Motion to Dismiss Defendant's CFAA counterclaim shall be granted.

### C. Defendant's State Law Claims are Tangential to Plaintiff's Original Claims

Lastly, Plaintiff moves to dismiss Defendant's remaining state law claims for lack of supplemental jurisdiction. In addition to its two federal claims, Defendant invokes 28 U.S.C. §1367 to bring three additional counterclaims arising under state law: violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. §§ 5701, *et seq.*, (Count IV), Replevin (Count V), and Misappropriation of Trade Secrets Under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat §§ 5301 *et seq.* (Count VI). (Am. Countercl. ¶¶ 107-131.)

Having dismissed Defendant's federal counterclaims, Defendant must establish the remaining state law claims bear more than a "mere tangential overlap of facts" to Plaintiff's original federal law claims. *Alpern v. Cavarocchi*, Civ. No. 98-3105, 1999 U.S. Dist. LEXIS 5929, at *29 (E.D. Pa. Apr. 29, 1999). "[A] commonality between the operative facts [of the state law claims and the federal claims if] they all arose in the context of [Plaintiff's] employment with [Defendant] . . . is [not sufficient] to make the claims part of the same case or controversy for the purposes of conferring supplemental jurisdiction." Alpern, 1999 U.S. Dist. LEXIS 5929 at *32 (internal quotation marks omitted).

Plaintiff's original federal law claims were brought under Title VII, the ADA, and the FMLA. The facts which give rise to these claims deal primarily with the treatment Plaintiff experienced during her employment with Defendant and the alleged discrimination arising therefrom. The only relationship between the facts alleged by Plaintiff and those alleged by Defendant, is that they arise out of what was formerly an employer-employee relationship. As referenced above, an employer-employee relationship is "insufficient to establish a common nucleus of facts [in support of] supplemental jurisdiction." *Alpern*, 1999 U.S. Dist. LEXIS 5929 at *31.

Accordingly, because Defendant's state law counterclaims are only tangentially related to the remaining federal claims in this matter, Plaintiff's Motion to Dismiss Defendant's state law claims shall be granted.

### D. It Would be Futile and Prejudicial for the Defendant to Amend

Amendments to a Complaint may be made as a matter of course, but only if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182 (1962). An "amendment is futile if the [pleading], as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *United States v. Union Corp.*, 194 F.R.D. 223, 239 (E.D. Pa. 2000). Although "[l]eave must be freely granted when justice so requires," it could be denied where "undue delay, bad faith, dilatory motive, prejudice, or futility are present, [and in assessing futility], the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (internal quotation marks omitted). Where discovery has been "extensive"[3] and has already concluded,[4] leave to amend may be denied on prejudice grounds. *Sternberg v. Satco Casting Serv.*, Civ. 95-7084, 1996 U.S. Dist. LEXIS 19021, at *8 (E.D. Pa. Dec. 20, 1996).

---

[3] *See supra* n. 2.
[4] Jurisdictional discovery has concluded in this matter.

Inasmuch as the requisite conditions for amendment as a matter of course are absent here, amendment is only permitted by leave of court or with the written consent of the opposing party. Fed. R. Civ. P. 15(a)(2). Defendant was granted an opportunity to conduct jurisdictional discovery with specific regard to the federal claims and to file an Amended Answer and/or Counterclaim following jurisdictional discovery (ECF No. 31.) This opportunity was further extended, yet Defendant's federal counterclaims remain unsustainable. Inasmuch as extensive discovery has already taken place, this Court opines that further attempts to amend would be an exercise in futility and would result in prejudice to Plaintiff. *Id*. Accordingly, any such leave shall not be granted.

## V. Conclusion

For the reasons set forth herein, Defendant's federal counterclaims against Plaintiff shall be dismissed with prejudice and this Court declines to exercise supplemental jurisdiction over the remaining state law counterclaims.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II    J.